IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Ronnie Chavious, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 5:17-2564-BHH |
| v. | ) | |
| | ) | |
| Nancy A. Berryhill, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Acting Commissioner of Social Security's ("Commissioner") final decision, which denied Plaintiff Ronnie Chavious' ("Plaintiff") claim for disability insurance benefits. The record includes the report and recommendation ("Report") of United States Magistrate Judge Kaymani D. West, which was made in accordance with 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.).

In her Report, the Magistrate Judge recommends that the Court reverse and remand the Commissioner's final decision for further administrative action. Specifically, the Magistrate Judge found a conflict in the evidence regarding Plaintiff's need to use a cane while standing. The Commissioner filed objections to the Report, and the matter is ripe for review. *See* 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's Report within 14 days after being served a copy). For the reasons stated below, the Court declines to adopt the Magistrate Judge's Report in full and instead finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Court affirms the Commissioner's final decision denying benefits.

## BACKGROUND

Plaintiff applied for disability insurance benefits on October 1, 2013, alleging he became disabled on March 14, 2012. His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on August 25, 2016. In a decision dated September 23, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Plaintiff requested review by the Appeals Council, and the Appeals Council denied review on July 19, 2017, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff filed this action seeking judicial review of the Commissioner's final decision on September 22, 2017.

Plaintiff was born on July 6, 1966, and was 47 years old on his alleged onset date of March 14, 2012; 48 years old as of his protected filing date of October 1, 2013; and 49 years old as of his date last insured of December 31, 2014. Plaintiff indicated he completed the twelfth grade but did not complete any specialized job training. Plaintiff listed his past relevant work as electric laborer and construction laborer, and claims he stopped working on March 14, 2012, due to back and knee problems.

## STANDARDS OF REVIEW

### I. The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court conducts a de novo review to those portions of the Report to which a

specific objection is made, and this Court may accept, reject, or modify, in whole or in part, the recommendations contained in the Report. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the Report to which the objection is made and the basis for the objection. *Id.* If a party fails to file any specific objections, this Court "need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted).

## II. Judicial Review of a Final Decision

The federal judiciary plays a limited role in the administrative scheme as established by the Social Security Act. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebreeze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility

3

determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

I.     **The Commissioner's Final Decision**

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c) If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a) If the answer is in the affirmative, the final consideration looks to whether the impairment precludes that claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to

4

provide evidence of a significant number of jobs in the national economy that the claimant could perform, taking into account the claimant's medical condition, functional limitations, education, age, and work experience. *Walls*, 296 F.3d at 290.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of March 14, 2012, through his date last insured of December 31, 2014. Next, the ALJ determined that Plaintiff has the following severe impairments: sciatica; degenerative disc disease of the lumbar spine with stenosis; left knee medial meniscus tear and effusion; and vision problems. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) with the additional limitations of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking up to 6 hours in an 8 hour day; using a cane for ambulation; requiring a 30-minute sit/stand option; sitting 6 hours in an 8 hour day; no more than occasional pushing and pulling with left lower extremity; no more than occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling; and no work requiring fine visual acuity. The ALJ found that Plaintiff was not able to perform past relevant work, but that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. Therefore, the ALJ found that Plaintiff was not under a disability at any time from March 14, 2012, the alleged onset date, through December 31, 2014, the date last insured.

## II. The Court's Review

In this action seeking judicial review, Plaintiff raises three allegations of error: (1) that the Commissioner failed to show at step five of the sequential evaluation process other work that Plaintiff could perform; (2) that the ALJ did not explain his findings regarding Plaintiff's RFC as required by Social Security Ruling 96-8p; and (3) that the ALJ Failed to properly evaluate Plaintiff's subjective symptomology. (ECF No. 16 at 13, 16, and 19.)

In her Report, the Magistrate Judge outlined the evidence and first examined Plaintiff's claim related to the ALJ's step five analysis and found no error. Specifically, the Magistrate Judge determined that substantial evidence supports the ALJ's determination that there are jobs in sufficient numbers in the national economy that Plaintiff can perform, including garment folder, sorter, and bottle line attendant. In so determining, the Magistrate Judge found that the ALJ's use of the term "fine visual accuity" does not conflict with the DOT, relying on the decision of *French v. Colvin.* No. 7:12-cv-297-FL, 2014 WL 1331042, *12 (E.D.N.C. Feb. 24, 2014) (finding no inherent conflict or confusion as to what the ALJ meant by "fine visual accuity" in posing a hypothetical to the VE). In addition, the Magistrate Judge found that even if the term "fine visual accuity" somehow conflicted with the DOT, substantial evidence still supports the ALJ's RFC findings and the ALJ's determination that Plaintiff can perform the work of a sorter, which includes no specific visual requirements.

No party filed objections to the Magistrate Judge's findings on this issue, and after review, the Court agrees with the Magistrate Judge's analysis and finds no clear error with respect to this issue. In the absence of a specific objection, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315

(4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note). Accordingly, the Court adopts this portion of the Magistrate Judge's Report and finds that substantial evidence supports the ALJ's findings at step five of the sequential evaluation process.

The Magistrate Judge next evaluated Plaintiff's claim that the ALJ did not explain his RFC findings and properly consider Plaintiff's need for a cane while standing. Ultimately, the Magistrate Judge agreed with Plaintiff that the record reveals a conflict regarding whether Plaintiff's use of a cane while standing was medically necessary. The Magistrate Judge explained by stating:

> On several visits to his physician, Chavious complained of knee and back pain. *See* Tr. 281; Tr. 283; Tr. 286; Tr. 288; Tr. 290. During these visits, Chavious reported symptoms of "weakness" in the form of "weakness with weight bearing or walking" and "instability" in the sense that he experienced the "sensation of giving way." Tr. 281; Tr. 283; Tr. 286; Tr. 288. On January 25, 2013, Chavious saw Dr. Carter who reported that "[t]he MRI of the left knee shows a complex posterior horn medial meniscus tear." Tr. 290. Dr. Carter reported that he was going to set up an appointment with Dr. Holford for his knee problems. Tr. 290. Chavious testified that Dr. Holford prescribed the cane. Tr. 64. On August 31, 2012, Chavious reported to Dr. Carter "that sitting straight up or standing straight up with weight on both legs tends to cause shooting pains in his his [sic] left low back and left knee." Tr. 292. Dr. Carter also observed that Chavious "cannot bend and lift anything heavier than 10 pounds without significant symptoms." Tr. 292. Moreover, the VE testified that the need for a cane while standing would "eliminate sedentary work" and significantly erode the number of jobs at the light level. Tr. 87. But the record also indicates that during some of his examinations, Chavious had a full range of knee motion and 5/5 bilateral knee strength. *See, e.g.*, Tr. 287.

(ECF No. 28 at 16-17.) Because the Magistrate Judge found that the ALJ failed to provide a discussion resolving the conflicting testimony and evidence regarding Plaintiff's need to

7

use a cane while standing, the Magistrate Judge recommended that the Court remand the case for additional findings.

The Commissioner objects to the Magistrate Judge's findings on this issue, asserting that, "[c]ontrary to the R&R, there was no conflict in the record because no doctor prescribed a cane and, therefore, by definition, the cane was not 'medically necessary.'" (ECF No. 30 at 1.) After review, the Court agrees with the Commissioner.

Pursuant to Social Security Ruling 96-9P, "[t]o find that a hand-held assistive device is medically required, there must be *medical documentation* establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations: distance and terrain; and any other relevant information)." S.S.R. 96-9P, 1996 WL 374185, *7 (emphasis added). Here, although the Magistrate Judge is correct that Plaintiff testified that Dr. Halford prescribed him a cane that he used "all the time," and that Plaintiff complained to doctors about pain when sitting straight up or standing and weakness when weight-bearing or walking, the record does not include *medical documentation* regarding Plaintiff's need to use a cane for any circumstance. For example, the record does not contain a prescription for a cane or even a record of Plaintiff using one at a medical visit. Moreover, despite Plaintiff's testimony that Dr. Holford prescribed him a cane, it appears from the medical records that Dr. Holford only prescribed a medical brace. (ECF No. 11-7 at 9-17; *see also* ECF No. 30 at 4-5 (outlining all medical visits that do not include any documentation of Plaintiff's use of a cane).

In addition, the Court agrees with the Commissioner that the case of *Hamlin v. Colvin*, 2014 WL 587464 (D.S.C. Jan. 23, 2014), upon which the Magistrate Judge relied,

is distinguishable from the facts of this case. In *Hamlin*, the record contained conflicting *medical documentation* about the claimant's need to use a cane, and the Court remanded for further consideration of whether a cane was medically necessary. In contrast, the record before this Court contains no medical documentation regarding Plaintiff's need to use a cane, whether for ambulation, standing, or otherwise, and the only evidence of Plaintiff's need to use a cane is Plaintiff's testimony that a doctor prescribed him one, which is not consistent with his medical records. *See also Denman v. Berryhill*, No. 6:17-2526-DCC-KFM, 2018 WL 7135519 (D.S.C. Dec. 13, 2018), report and recommendation adopted by *Denman v. Berryhill*, No. 6:17-2526-DCC, 2019 WL 341719 (D.S.C. Jan. 28, 2019) (finding that substantial evidence supported the ALJ's finding that a claimant's use of a cane or walker not medically necessary where the evidence showed that the claimant ambulated without difficulty and presented to medical appointments without a device and was only sporadically noted to use the device).

    Here, the ALJ actually gave Plaintiff the benefit of including the need to use a cane for ambulation in her RFC determination based on his testimony. (ECF No. 11-2 at 18 ("Although the evidence does not show that claimant was prescribed a cane, it was added to the residual functional capacity based on his testimony.").) Ultimately, however, the Court agrees with the Commissioner that there is no conflict in the evidence regarding whether it was medically necessary for Plaintiff to use a cane while standing, insofar as the record contains no medical documentation establishing the need for a cane to aid in either walking or standing. *See* S.S.R. 96-9p. Therefore, the Court declines to adopt the Magistrate Judge's findings on this issue and instead finds that substantial evidence supports the ALJ's RFC findings.

Because the Magistrate Judge declined to consider Plaintiff's remaining allegation of error, the Court will now consider Plaintiff's claim that the ALJ failed to properly evaluate Plaintiff's subjective symptomology. Plaintiff asserts that the ALJ did not properly consider the objective evidence of record including Plaintiff's positive straight leg raises, limited range of motion, and muscle spasms. Plaintiff further contends that the ALJ provided a laundry list of Plaintiff's daily activities but failed to properly consider Plaintiff's testimony regarding how and under what circumstances he could perform those activities. Plaintiff also complains that the ALJ's decision fails to include a proper discussion of the effects of Plaintiff's medications and other precipitating and aggravating factors.

In response, the Commissioner asserts that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. The Commissioner contends that the ALJ gave sufficient reasons explaining her determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record. The Commissioner explains:

> In support of her conclusion, the ALJ observed that the evidence did not reflect significant strength deficits, circulatory compromise, neurological deficits, muscle spasms, or muscle atrophy or dystrophy that are often associated with long-standing severe pain and physical inactivity (Tr. 16). She further observed that multiple emergency room visits generally revealed only tenderness, but that Plaintiff had normal range of motion, negative straight-leg raising tests, no neurological deficits, and no lower extremity weakness (*id.*).
>
> The ALJ thoroughly explained why Plaintiff's statements of disabling symptoms were inconsistent with the record evidence. Yet despite the absence of significant objective abnormalities during the relevant period, the ALJ reduced Plaintiff's RFC to the relatively minimal demands of light work that allowed him to use a cane for ambulating, that gave him the option to change from sitting to standing every 30 minutes, that only occasionally required that he use his left leg to push and/or pull, that only occasionally required that he engage in postural maneuvers, and that did not involve fine

visual acuity.

(ECF No. 23 at 21.)

In accordance with Social Security Ruling 16-3p, an adjudicator must evaluate the intensity and persistence of a claimant's symptoms to determine whether those symptoms limit the claimant's ability to perform work-related activities. In evaluating a claimant's subjective symptoms, an adjudicator follows a two-step process. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (explaining the two-step process in determining whether a person is disabled by pain or other symptoms). First, an adjudicator determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. Second, an adjudicator evaluates the intensity and persistence of a claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *See id.*; *see also* SSR 16-3p. Social Security Ruling 16-3p indicates that an adjudicator "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." S.S.R. 16-3p. Rather, a report of minimal findings or inconsistencies in the objective evidence is one of many factors an adjudicator considers in evaluating intensity, persistence, and pace. In addition, if an adjudicator cannot make a favorable disability determination based solely on the objective medical evidence, then the adjudicator considers other evidence, including statements from the individual, medical sources, and other sources that may have information about the symptoms. *Id.* In addition:

In evaluating an individual's symptoms, our adjudicators will not assess an

> individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

S.S.R. 16-3p, *10. In evaluating a claimant's subjective complaints, the following factors are relevant: daily activities; the location, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, used to alleviate pain or other symptoms; other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

Here, the Court agrees with the Commissioner that the ALJ adequately explained her determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record. A review of the ALJ's decision indicates that she thoroughly considered the objective medical evidence and noted inconsistencies between the evidence and Plaintiff's subjective complaints. The ALJ explained:

> Through the date last insured, the evidence did not show significant strength deficits, circulatory compromise, neurological deficits, muscle spasms, or muscle atrophy or dystrophy that are often associated with long standing, severe or intense pain, and physical inactivity. The claimants' symptoms and their impact on his ability to work were not entirely consistent with the medical evidence.
>
> The claimant had multiple emergency room visits for his low back pain; however, physical exam findings usually revealed tenderness to the lumbar spine and showed normal range of motion, negative straight leg raising test, no neurological deficits, and no lower extremity weakness. X-ray of the

>lumbar spine was normal. (Exhibits 2F, 4F, 5F, 6F, and 9F).
>
>As to the claimant's left knee pain, there were no complaints of knee pain after he stopped seeing Carolina Musculoskeletal Institute in October 2013.
>
>Given the claimant's allegations of disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

(ECF No. 11-2 at 17.)

Although Plaintiff points to one record from Dr. Carter indicating that Plaintiff has difficulty getting up from a sitting position and walks with a an antalgic gait, the doctor's notes from this record also indicate that Plaintiff's cervical spine was nontender to palpation and that Plaintiff has good range of motion. (*See* ECF No. 11-7 at 20.) The Court finds that Plaintiff' citation to selective evidence does not render the ALJ's decision unsupported by substantial evidence, because the ALJ's decision reflects careful consideration of the medical evidence as a whole and the limitations that stem from Plaintiff's impairments.

Moreover, the Court finds no merit to Plaintiff's assertion that the ALJ failed to properly consider his testimony regarding the manner in which he performed his daily activities. In her decision, the ALJ explained that Plaintiff does not have a driver's license, that Plaintiff is independent in his personal care; and that Plaintiff attends church on Sunday. It does not appear that Plaintiff's activities of daily living weighed heavily in the ALJ's evaluation of Plaintiff's symptomology, and because it is clear that the ALJ considered Plaintiff's testimony along with other factors relevant to Plaintiff's subjective complaints, the Court finds no error in the ALJ's failure to refer to every specific portion of Plaintiff's testimony from the hearing.

13

Finally, with respect to Plaintiff's assertion that the ALJ failed to consider the effects of Plaintiff's medications and precipitating and aggravating factors, the Court notes that Plaintiff's allegation is entirely conclusory. The ALJ clearly indicated in her decision indicates that Plaintiff took Tylenol and was prescribed muscle relaxers and other pain medication at medical visits, and Plaintiff does not explain any alleged effects of medication that the ALJ failed to consider. Likewise, with respect to Plaintiff's assertion that the ALJ failed to consider precipitating and aggravating factors, Plaintiff does not point to any factors the ALJ failed to consider other than his assertion that the ALJ did not consider his reports of pain on bending. Here, a review of the ALJ's decision indicates that she consistently noted Plaintiff's multiple complaints of back pain, and the Court ultimately finds that the ALJ adequately explained the reasons supporting her determination that Plaintiff's statements of disabling symptoms were not entirely consistent with the record evidence. The Court therefore finds that Plaintiff has failed to show that the ALJ's evaluation of Plaintiff's subjective complaints is unsupported by substantial evidence or controlled by an error of law.

Ultimately, this Court's role is not to re-weigh the evidence or to substitute its judgment for that of the Commissioner. Instead, the Court's role is to determine whether substantial evidence supports the Commissioner's decision. Here, for the reasons set forth above, the Court finds that substantial evidence supports the ALJ's decision denying Plaintiff's claim for benefits.

## **CONCLUSION**

For the foregoing reasons, the Court adopts the Magistrate Judge's Report only with respect to Plaintiff's first allegation of error. The Court declines to adopt the remainder of

the Report because the Court finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Magistrate Judge's Report (ECF No. 28) is adopted in part and not overruled in part; the Commissioner's objections (ECF No. 30) are sustained; and the Commissioner's final decision denying benefits is affirmed.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

March 18, 2019
Charleston, South Carolina